**In re Tomasco**

Disciplinary Board Docket no. 111 D.B. 2004.

BEVILACQUA, *Member,* March 13, 2009—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme

Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

On September 4, 2007, Mary Ellen Tomasco filed a petition for reinstatement to the bar of the Supreme Court of Pennsylvania, following her suspension for a period of one year and one day imposed on March 10, 2006. Office of Disciplinary Counsel filed a response to petition for reinstatement on November 26, 2007, and identified several issues relating to petitioner's actions post-suspension.

A reinstatement hearing was held on May 9, 2008, before a District II Hearing Committee comprised of Chair Michael A. Cognetti, Esquire, and Members Patrick J. Connors, Esquire, and Michael J. Malloy, Esquire. Petitioner was represented by John Rogers Carroll, Esquire. Petitioner presented the testimony of four witnesses and testified on her own behalf. Office of Disciplinary Counsel presented the testimony of one witness.

Following the submission of briefs by the parties, the Hearing Committee filed a report on October 16, 2008, and recommended that the petition for reinstatement be granted.

Office of Disciplinary Counsel filed a brief on exceptions on October 30, 2008, and requested that the board reject the Hearing Committee's recommendation and recommend that the petition for reinstatement be denied.

4

Petitioner filed a brief opposing exceptions on December 1, 2008.

This matter was adjudicated by the Disciplinary Board at the meeting on January 28, 2009.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner is Mary Ellen Tomasco. She was born in 1949 and was admitted to practice law in Pennsylvania in 1974. Her current business address is P.O. Box 987, Valley Forge, PA 19482.

(2) By order of March 10, 2006, the Supreme Court of Pennsylvania suspended petitioner from the practice of law for a period of one year and one day.

(3) Petitioner's misconduct leading to the suspension was a conflict of interest with her client, which violated R.P.C. 1.7(b), 1.8(a) and 1.8(b).

(4) Petitioner was the attorney for Alta Kressler, a mentally incompetent individual, and had power of attorney authority over Ms. Kressler's financial accounts.

(5) Without obtaining any written waiver or consent from her client, petitioner drafted and executed an indenture and mortgage in the amount of $275,000 to finance petitioner's purchase of land in New Mexico. Petitioner failed to obtain separate counsel to represent Ms. Kressler and failed to take any steps to have the indenture transaction recorded.

(6) Prior to petitioner's suspension, by letter of June 30, 2005, she notified her clients of her retirement from

the practice of law and the transfer of her law practice to Samuel Trueblood, Esquire, and the law firm of Wilson, Morrow, Broderick, Tompkins & Flynn LLP. As part of the arrangement between petitioner and the law firm, petitioner was to act as a paralegal and assist Mr. Trueblood with Alta Kressler's matters.

(7) This decision to retire came during the pendency of petitioner's disciplinary proceeding, which was still ongoing in June of 2005.

(8) Upon assuming petitioner's practice, Mr. Trueblood wrote to the register of wills of Chester County and Montgomery County to advise them of his entry of appearance in petitioner's active cases and petitioner's withdrawal.

(9) Petitioner has worked as a paralegal for Wilson Morrow since the summer of 2005.

(10) By letter of March 13, 2006, Elaine M. Bixler, secretary of the board, provided petitioner with a copy of the March 10, 2006 suspension order and advised her that she was required to comply with the Pennsylvania Rules of Disciplinary Enforcement and Disciplinary Board rules. Petitioner was provided with copies of all pertinent rules.

(11) On April 10, 2006, petitioner filed a statement of compliance with the Disciplinary Board and falsely certified that under the penalties provided by 18 Pa.C.S. §4904 she had fully complied with the provisions of the order of the Supreme Court, with the applicable provisions of the Pennsylvania Rules of Disciplinary Enforcement and with the applicable Disciplinary Board rules.

6

(12) In fact, petitioner had not provided notice of her suspension to Alta Kressler and Ruth Smoyer, two individuals for whom she was acting as power of attorney and to whom she owed a fiduciary duty.

(13) At the time she filed the statement of compliance, petitioner was aware of her obligation to notify Ms. Kressler and Ms. Smoyer. After discussions with Samuel Trueblood, it was determined that petitioner need not comply with the requirement to provide notice, as both individuals were either incompetent or near death.

(14) By letter of April 11, 2006, Samuel Trueblood notified the board that petitioner was employed by his firm as a legal assistant and that he was her supervising attorney pursuant to Rule 217(j)(5), Pa.R.D.E.

(15) On April 26, 2006, petitioner was appointed executor and Samuel Trueblood was appointed attorney for the estate of Ruth Smoyer, who passed away on April 20, 2006.

(16) Petitioner received $3,500 for the Smoyer estate as a personal representative commission.

(17) On July 10, 2006, Alta Kressler passed away and on July 18, 2006, petitioner was appointed co-executor of the estate, with Robert Noll. Up until Ms. Kressler's death, petitioner still remained as attorney in fact and in control of Ms. Kressler's finances.

(18) Petitioner saw no appearance of impropriety and no potential for conflict by acting as co-executor for the Kressler estate.

(19) Petitioner received $17,500 from the Kressler estate as a personal representative commission.

(20) The Kressler estate involved charitable bequests greater than $25,000 and written notice was required to be given to the attorney general of Pennsylvania.

(21) In January 2007 Mr. Trueblood provided the first and final account of the estate to Mary Kenney, senior deputy attorney general of the charitable trusts and organizations section of the office of attorney general.

(22) The first and final account did not contain information to indicate that petitioner had served as Ms. Kressler's agent under a power of attorney nor did it indicate the fact that petitioner was a suspended attorney.

(23) By letter to Mr. Trueblood dated February 15, 2007, Ms. Kenney acknowledged receipt of Mr. Trueblood's notice and advised that she had no objections.

(24) In January 2008, Ms. Kenney was informed for the first time that petitioner had served prior to Ms. Kressler's death as Ms. Kressler's agent under a power of attorney and that, in such role, petitioner had been the subject of a disciplinary proceeding before the Disciplinary Board.

(25) Ms. Kenney would not have issued her February 15, 2007 "no objection letter" had she known of petitioner's suspension. Ms. Kenney would have asked that petitioner not serve as executor and would have filed a petition with the Orphans' Court requesting that petitioner be removed.

(26) The attorney general's position was that petitioner should not continue to have access to funds and to serve in a fiduciary position as executor because she

had previously breached her fiduciary duty to Ms. Kressler and had been involved in self-dealing.

(27) By letter to Mr. Trueblood dated January 17, 2008, Ms. Kenney advised that she had been apprised that petitioner had served as the decedent's agent under a power of attorney and requested on behalf of the attorney general's office a copy of the power of attorney and an account of petitioner's administration as Ms. Kressler's agent.

(28) By cover letter to Ms. Kenney, dated April 17, 2008, Mr. Trueblood provided the accounting of the Alta Kressler lifetime estate by Mary Ellen Tomasco.

(29) At the time of the May 9, 2008 reinstatement hearing, Ms. Kenney had not approved the power of attorney account and was still investigating certain aspects of the account.

(30) Mr. Trueblood testified at the reinstatement hearing. He has been a member of the Pennsylvania Bar since 1975 and petitioner's supervising attorney since July 1, 2005. Petitioner has done excellent work in estate matters.

(31) William Morrow, Esquire, is the managing partner of Morrow, Tompkins, Trueblood, and Fittipaldi LLC, formerly Wilson, Morrow, Broderick, Tompkins & Flynn LLP.

He describes petitioner's paralegal work as very good and has a high regard for petitioner.

(32) Elizabeth Howard, Esquire, has been a member of the bar since 1978 and stated that petitioner has an impeccable reputation in Chester County.

(33) Mark Blank, Esquire, has been a member of the bar in Pennsylvania since 1976 and is a former divorce master in Chester County. He stated that petitioner has an excellent reputation as an honest and very competent attorney.

(34) Petitioner fulfilled her continuing legal education requirements necessary for reinstatement and if reinstated, plans to practice estate law, but does not intend to act as power of attorney in any new matters.

## III. CONCLUSIONS OF LAW

(1) Petitioner has failed to meet her burden of proof by clear and convincing evidence that she has the moral qualifications, competency and learning in the law required to practice law in the Commonwealth of Pennsylvania. Pa.R.D.E. 218(c)(3)(i).

(2) Petitioner has failed to meet her burden of proof by clear and convincing evidence that her resumption of the practice of law will be neither detrimental to the integrity and standing of the bar or the administration of justice nor subversive of the public interest. Pa.R.D.E. 218(c)(3) (i).

## IV. DISCUSSION

Petitioner seeks reinstatement to the bar of the Supreme Court of Pennsylvania following her suspension for a period of one year and one day imposed on March 10, 2006.

Pursuant to Rule 218(a), Pa.R.D.E., an attorney who is suspended for a period exceeding one year may not

resume the practice of law until reinstated by the Supreme Court of Pennsylvania. In order for petitioner to gain reinstatement, she has the burden of proving by clear and convincing evidence that she possesses the moral qualifications, competency and learning in the law required for admission to practice law in this Commonwealth. In addition, petitioner has the burden of demonstrating that her resumption of the practice of law will not be detrimental to the integrity and standing of the bar or administration of justice nor subversive of the pubic interest. Rule 218(c)(3)(i), Pa.R.D.E.

The reinstatement process is a searching inquiry into a lawyer's present professional and moral fitness to resume the practice of law. The object of concern is not solely the transgressions which gave rise to the lawyer's suspension, but rather the nature and extent of the rehabilitation efforts the lawyer has made since the time the sanction was imposed, and the degree of success achieved in the rehabilitative process. *Philadelphia News Inc. v. Disciplinary Board of the Supreme Court,* 468 Pa. 382, 363 A.2d 779 (1976).

Petitioner was suspended for a period of one year and one day as a result of misconduct arising from her participation in a real estate transaction with her mentally incompetent client, for whom petitioner had power of attorney authority. The essence of petitioner's misconduct was a conflict of interest with her client. Petitioner, as attorney-in-fact for her client and without obtaining any written waiver or consent from her client, drafted and executed an indenture and mortgage in the amount of $275,000 to finance petitioner's purchase of land in New Mexico. Petitioner failed to obtain separate counsel to represent her client in the transaction and failed to take

any steps to have the indenture transaction recorded. The board in the underlying disciplinary proceeding found that petitioner's misconduct went to the heart of the attorney client relationship, as she abused her professional relationship with her client for personal gain.

Although the Supreme Court order of suspension was imposed on March 10, 2006, prior to this date petitioner had decided to "retire" from the practice of law. By letter of June 30, 2005, petitioner notified all of her clients as to her retirement from the practice of law and the transfer of her practice to the law firm of Wilson, Morrow Broderick, Tompkins & Flynn LLP. The time frame of this decision fell after the Hearing Committee in the disciplinary matter issued a report recommending public discipline. Petitioner began work as a paralegal for the firm in the summer of 2005, with Samuel Trueblood, Esquire, acting as her supervisor. During this time petitioner continued to act as power of attorney for Alta Kressler and was paid for her services; however, after the effective date of her suspension, petitioner failed to notify Alta Kressler or Ruth Smoyer or their beneficiaries of her status as a suspended lawyer, as required by the Rules of Disciplinary Enforcement. Petitioner's explanation was that she determined since both of the individuals were infirm and near death, notice would not accomplish anything.

During the time of petitioner's suspension Ruth Smoyer and Alta Kressler passed away. Petitioner was appointed executor of both estates. The Kressler estate involved charitable bequests greater than $25,000 and as such written notice was given to the attorney general. At no time were the attorney general and the charitable trusts and organizations section of that office given notice

that the individual acting as executor was a disciplined attorney whose misconduct occurred as a result of her previous handling of the estate in question. According to Mary Kenney, senior deputy attorney general, the office is still investigating aspects of the power of attorney account.

Petitioner's position is that she had no obligation to resign her power of attorney for Ms. Kressler subsequent to her suspension and was not prohibited from serving as executrix for Ms. Kressler and Ms. Smoyer. Petitioner demonstrated poor judgment and motive in her decision to continue as Ms. Kressler's agent and to serve as executrix for the estate following her suspension, instead of dissociating herself from the source of her original conflict of interest. This behavior indicates that petitioner has no greater appreciation of her wrongdoing and has not rehabilitated herself from her original misconduct, which involved the same lack of judgment and foresight as to the implications of her actions. Petitioner has not demonstrated, by clear and convincing evidence, that she is fit to practice law.

For the above reasons, the board recommends that the petition for reinstatement be denied.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that the reinstatement of petitioner, Mary Ellen Tomasco, be denied.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board Member Newman did not participate in the adjudication.

Board Member Cognetti abstained.

## ORDER

And now, July 8, 2009, upon consideration of the report and recommendations of the Disciplinary Board dated March 13, 2009, the petition for reinstatement is denied.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.